Yar v Singh (2024 NY Slip Op 51474(U))

[*1]

Yar v Singh

2024 NY Slip Op 51474(U)

Decided on October 29, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 29, 2024
Supreme Court, Kings County

Muhammad Yar, Plaintiff,

against
Malkiat Singh, Defendant.

Index No. 503689/2020

Sutton & Smyth, LLP, New York City (Michael J. Lezamiz of counsel), for plaintiff. 
McGivney Kluger Clark & Intoccia, P.C., New York City (Stephen B. Toner of counsel), for defendant. 

Aaron D. Maslow, J.

The court has concluded taking testimony in the trial of Muhammad Yar v Malkiat Singh, a motor vehicle case in which Plaintiff Muhammad Yar ("Plaintiff") claims that Defendant Malkiat Singh ("Defendant") struck him from behind while driving on the Van Wyck Expressway within John F. Kennedy International Airport located in Queens, New York, on October 21, 2019. It is contended that both Plaintiff and Defendant were prepared to exit at Exit B to drive to the airport's Cell Phone Lot, and that a third vehicle turned in front of Plaintiff's vehicle causing Plaintiff to stop [FN1]
or slow down [FN2]
, after which Defendant struck Plaintiff in the rear of Plaintiff's vehicle.
In this liability phase of the trial, the following two motions are at issue: (1) Plaintiff's motion for a directed verdict on the issue of Defendant's negligence as well as to dismiss Defendant's affirmative defenses of comparative fault and emergency, and (2) Defendant's motion to dismiss Plaintiff's complaint.
In Woodley v Ramirez, the First Department held that the lead driver who had stopped his vehicle abruptly to avoid hitting a stretch limousine that unexpectedly pulled out in front of him from a parking space was not negligent with respect to the rear-end collision that ensued with the vehicle that was tailgating him (see Woodley v Ramirez, 25 AD3d 451 [1st Dept 2006]). In Woodley, it was held that "The driver of a stopped vehicle struck from behind by another vehicle [*2]is entitled to summary judgment unless the driver of the following vehicle presents a non-negligent explanation for the accident, or a non-negligent reason for his failure to maintain a safe distance between his car and the lead car. A claim that the lead vehicle 'stopped suddenly' [which is applicable here because Defendant Singh claimed that he stopped suddenly] is generally insufficient to rebut the presumption of non-negligence on the part of the lead vehicle" (id. at 452.). As a result, the First Department concluded that "Under these circumstances, defendant Woodley's conduct in bringing his vehicle to an abrupt stop is insufficient to create a triable issue of fact as to whether he was negligent in operating his vehicle" (id. at 453.).
In Lopez v Dobbins, defendant Dobbins argued that plaintiff Lopez made a sudden stop (Lopez v Dobbins, 164 AD3d 776 [2d Dept 2018]). Specifically, "the plaintiff was driving east on the Long Island Expressway at or near its intersection with the Grand Central Parkway in Queens County when his vehicle allegedly was struck in the rear by an Access-A-Ride vehicle operated by the defendant Michael K. Dobbins" (id. at 777.). The Second Department held that "the plaintiff established his prima facie entitlement to judgment as a matter of law through the submission of his own affidavit, in which he averred that his vehicle was in the center lane of the Long Island Expressway braking and slowing down in response to traffic conditions, when it was struck in the rear by Dobbins' vehicle. This affidavit demonstrated, prima facie, that Dobbins was negligent" (id.). Most importantly, the Court concluded that "In opposition to the plaintiff's prima facie showing, the defendants' contention that the plaintiff's vehicle made a sudden stop when it was cut off by a third vehicle did not, standing alone, provide a nonnegligent explanation for Dobbins' conduct or raise a triable issue of fact as to whether the plaintiff was comparatively at fault" (id. at 778.).
In Comas-Bourne v City of New York, "In support of the motion, the plaintiff submitted, inter alia, an affidavit wherein she stated that she was proceeding straight on Foster Avenue when a parked vehicle suddenly pulled out from the curb and cut her off. The plaintiff stated that in response, she brought her vehicle to a stop, and after her vehicle had come to a complete stop, it was rear-ended by the defendants' vehicle" (Comas-Bourne v City of New York, 146 AD3d 855 [2d Dept 2017]). The Second Department expressly held that "the emergency doctrine is not applicable to this case" (id. at 856.). In pertinent part, the court wrote at pages 856-857:
"When the driver of an automobile approaches another automobile from the rear, he or she is bound to maintain a reasonably safe rate of speed and control over his vehicle, and to exercise reasonable care to avoid colliding with the other vehicle" (Gaeta v Carter, 6 AD3d 576, 576 [2004]; see Gallo v Jairath, 122 AD3d 795, 796 [2014]; Taing v Drewery, 100 AD3d 740, 741 [2012]). A rear-end collision with a stopped or stopping vehicle creates a prima facie case of negligence against the operator of the rear vehicle, thereby requiring that operator to rebut the inference of negligence by providing a nonnegligent explanation for the collision (see Tutrani v County of Suffolk, 10 NY3d 906, 908 [2008]; Brothers v Bartling, 130 AD3d 554, 555 [2015]; Le Grand v Silberstein, 123 AD3d 773, 774 [2014]; Williams v Spencer-Hall, 113 AD3d 759, 760 [2014]). "To prevail on a motion for summary judgment on the issue of liability, a plaintiff must establish, prima facie, not only that the opposing party was negligent, but also that the plaintiff was free from comparative fault" (Phillip v D&D Carting Co., Inc., 136 AD3d [*3]18, 22 [2015]; see Melendez v McCrowell, 139 AD3d 1018, 1020 [2016]).[[FN3]
]
Here, in support of her motion, the plaintiff submitted evidence sufficient to establish, prima facie, that she was not negligent in the happening of the accident, and that Neal's negligent operation of his vehicle was the sole proximate cause of the accident (see Staskiv v Shlayan, 132 AD3d 971 [2015]; Cajas-Romero v Ward, 106 AD3d 850, 852 [2013]; Ayach v Ghazal, 25 AD3d 742, 743 [2006]). In opposition, the defendants failed to raise a triable issue of fact as to whether the plaintiff was comparatively at fault or whether Neal had a nonnegligent explanation for rear-ending the plaintiff's vehicle (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). . . . Additionally, the emergency doctrine is not applicable to this case (see Vehicle and Traffic Law § 1129 [a]; Lowhar-Lewis v Metropolitan Transp. Auth., 97 AD3d 728, 729 [2012]; Jacobellis v New York State Thruway Auth., 51 AD3d 976, 977 [2008]; Campanella v Moore, 266 AD2d 423, 424 [1999]; Kowchefski v Urbanowicz, 102 AD2d 863 [1984]). [emphasis added]
In Waide v ARI Fleet, LT, the Second Department held that "A rear-end collision with a stopped or stopping vehicle establishes a prima facie case of negligence on the part of the operator of the rear vehicle, thereby requiring that operator to rebut the inference of negligence by providing a nonnegligent explanation for the collision" (Waide v ARI Fleet, LT, 143 AD3d 975, 976 [2d Dept 2016]). The Court further stated that "vehicle stops which are foreseeable under the prevailing traffic conditions must be anticipated by the driver who follows, since he or she is under a duty to maintain a safe distance between his or her vehicle and the vehicle ahead" (id.). In Waide, although it was stated that the "version of the events leading to the collision differed in some respects from the plaintiff's version, [Defendant] admitted seeing the truck pull out from the parking lot in front of the plaintiff's vehicle, and admitted being unable to stop in time to avoid the collision despite his estimated speed of five miles per hour . . . demonstrat[ing] that his failure to maintain a reasonably safe distance between the plaintiff's vehicle and his own vehicle was the sole proximate cause of the accident" (id.). In the trial at bar, Defendant testified that he saw the third vehicle turn in front of Plaintiff and, therefore, he was on notice that a collision could occur, warranting his avoiding striking Plaintiff. In Waide, Okodiko saw the truck pull out from the parking lot in front of the plaintiff — similar to Defendant seeking the black Camry turn in front of Plaintiff.
In Johnson v Phillips, which also involved a hit in the rear, the First Department held that the "emergency doctrine is inapplicable to routine rear-end traffic accidents" (Johnson v Phillips, 261 AD2d 269, 271 [1st Dept 1999]). Additionally, the "defendant's unsworn and unsupported claims of glare and lane blockage, presumably visible to [the] approaching car, [did not] present [an] emergency abrogating [the] obligation to maintain [a] reasonable distance" (id.). Notably, "Even when a front motorist stopped suddenly to allow passage of an ambulance, an emergency was not presented to rebut the inference of negligence and thereby exonerate the driver of the rear car (DiPaola v Scherpich, 239 AD2d 459)" (Johnson, 261 AD2d at 271).
In Roviello v Schoolman Transportation System, Inc., cited by Defendant, "The plaintiff [*4]allegedly was injured when the driver of the defendants' chartered bus was forced to brake suddenly to avoid colliding with a vehicle that suddenly drove in front of the bus. The plaintiff, a passenger on the bus, was in the aisle returning to her seat from the bus's bathroom, and allegedly fell and was injured" (Roviello v Schoolman Transportation System, Inc., 10 AD3d 356 [2d Dept 2004]). In Roviello, the bus driver had an emergency and was not held liable. Moreover, regarding the emergency doctrine, the Second Department held that "The emergency doctrine 'recognizes that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context' "(id. at 356-57.).
At trial, Defendant claimed to have traveled behind Plaintiff at a safe distance. However, he testified that the time between seeing Plaintiff's brake lights and impact was instantaneous (he snapped his fingers when on the witness stand to indicate this took place in less than a second). If the time was that short, it clearly establishes that Defendant followed too closely behind Plaintiff, in violation of Vehicle and Traffic Law § 1129 (a).
Defendant argued that Plaintiff's complaint should be dismissed because the emergency doctrine applies. In support of this point, Defendant stated that that a high-speed Toyota Camry drove past Plaintiff and Defendants' vehicles, that Defendant saw the Black Toyota Camry, and that Plaintiff stopped short to avoid hitting the Black Camry. Defendant did not have enough time to stop himself. Thus his vehicle hit Plaintiff's vehicle from behind. Defendant contended that he would have been able to avoid the accident if Plaintiff had kept a proper lookout in front of him, had seen the Black Toyota Camry, and had applied his breaks sooner.
Although the Lopez case, discussed above, also involved a stopped vehicle, and although it was stated that liability is imposed in a rear end collision case under normal traffic conditions, Defendant contends that the case on trial did not involve a normal traffic condition because another car, namely the Black Toyota Camry, sped past Plaintiff and Defendants' vehicles, turned two lanes without signaling in violation of the VTL, and continued into the lane directly in front of Plaintiff in the direction of the exit Plaintiff and Defendant were about to get off on. As a result, Defendant believes that he has a non-negligent explanation of striking the moving Plaintiff's vehicle at the time of the accident because if the Black Toyota Camry had not cut in front of Plaintiff, Defendant would have had time to apply his breaks.
Regarding the emergency doctrine, Defendant further contends that by no action on Defendant's part did he create this condition, especially because drivers are not held responsible in court for anticipating that a car will travel, for example, across two lanes in front of them. Most notably, Defendant stated that the cases cited by Plaintiff involved drivers who came to a "full stop," and that Defendant did not come to a full stop here, but rather slowed down and was avoiding Plaintiff's car at a lesser rate of speed.
Applying VTL § 1129 (a) and the above case law, the law treats the type of situation at issue here as a routine rear-end traffic accident in which the emergency doctrine is not applicable. As explained above by the First Department in the Johnson case, the emergency doctrine is inapplicable where the emergency is created by the defendant's own making (Johnson, 261 AD2d at 271). If one places himself in a specific situation as Defendant did here (by being too close behind Plaintiff), then one does not get to reap the benefits of the emergency doctrine. VTL§ 1129 (a) clearly states that "The driver of a motor vehicle shall not follow [*5]another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Defendant violated VTL § 1129 (a), which requires vehicles to have regard for the speed of vehicles around them and traffic conditions therein, when Defendant's vehicle proceeded behind Plaintiff's vehicle too closely, resulting in a collision in violation of VTL § 1129 (a).
Moreover, regarding Defendant's argument that Plaintiff did not "stop" and rather "slowed down," the mechanical physical differences between stopping and slowing down is without merit as the law treats these two in the same manner. This was an ordinary traffic situation involving a hit in the rear that did not involve an emergency and was foreseeable, thereby resulting in a presumption of negligence on the part of Defendant. Additionally, according to the comment to Pattern Jury Instructions 2:14, "The trial judge must make a threshold determination that there is some reasonable view of the evidence supporting the occurrence of a 'qualifying emergency' " (1A PJI3d 2:14, Comment at 298 [2024]). Moreover, as stated in the PJI book, "It was held error to give an emergency charge in a case involving a "routine" rear-end traffic accident" (id. at 299), citing Pincus v Cohen, 198 AD2d 405 [2d Dept 1993]; McCarthy v Miller, 139 AD2d 500 [2d Dept 1988]; Tyson v Brecher, 212 AD2d 851 [3d Dept 1995]).
In sum and substance, Plaintiff established prima facie liability on Defendant's part, who, in turn, failed to demonstrate a nonnegligent excuse for striking Plaintiff in the rear. If Defendant hit Plaintiff instantaneouly, then he was following too close behind Plaintiff. If he struck Plaintiff after a 5-6 second period or after ten seconds (other testimony) then he was not tailgating Plaintiff but had no excuse for not stopping in time to avoid striking Plaintiff.
This Court has reviewed all cases cited by Defendant. None of them involved a situation where a third vehicle drove in front of a plaintiff driver who was then struck in the rear by a defendant driver. Some of Defendant's cases deal with whether the front driver is liable for what transpired when he or she stopped to avoid colliding with a vehicle passing in front of him or her. That is not the situation in our trial. Plaintiff's cited cases, however, include the scenario we face in our trial: a defendant driver striking the rear of the vehicle occupied by a plaintiff, and a third vehicle crossing in front of the plaintiff's vehicle.
More specifically, Defendant cited the following cases and this Court finds them not on point (as contrasted with Plaintiff's cited cases):
Williams v Econ, 221 AD2d 429 [2d Dept 1995]: The plaintiff's vehicle crossed over the double yellow lines and collided head on with the plaintiff's (not the facts in the instant trial).
Caban v Vega, 226 AD2d 109 [1st Dept 1996]: The defendant Clarke was confronted with a spinning vehicle entering his lane of travel (totally different from the facts in the instant trial).
Barber v Young, 238 AD2d 822 [3d Dept 1997]: The defendant truck driver faced two standing vehicles on a highway, one of which had skidded to a stop in a crossways position (a total different fact pattern from the instant trial).
Guevara v Zaharakis, 303 AD2d 555 [2d Dept 2003]: The plaintiff fell asleep and crossed into oncoming traffic when struck by the defendant (completely different fact pattern from the instant trial).
[*6]Garcia v Prado, 15 AD3d 347 [2d Dept 2005]: The defendant struck a vehicle which had stopped perpendicularly in traffic because the driver of that vehicle lost control (Defendant in the instant trial did not strike a vehicle which had ended up in an erratic position on the highway).
Thomas v New York City Tr. Auth., 37 AD3d 821 [2d Dept 2007]: The defendant bus driver applied the brakes and stopped the bus to avoid making contact with a car which had gone through a red light (in the instant trial, Defendant was not the vehicle which encountered the vehicle passing in front).
Draper v Canada Dry Bottling of NY, 45 AD3d 526 [2d Dept 2007]: The plaintiff swerved to avoid contact with an unidentified third vehicle (Plaintiff in the instant trial did not swerve).
Miloscia v New York City Bd. of Educ., 70 AD3d 904 [2d Dept 2010]: The defendant stopped short to avoit htting a car which cut him off (nobody cut off Defendant in the instant trial).
Ming v Grossman, 133 AD3d 742 [2d Dept 2015]: The defendant swerved to avoid a collision with another vehicle which had cut him off (nobody cut off Defendant in the instant trial).
A common theme in cases cited by Defendant is the defendant being confronted with a vehicle crossing in front of him or her or with a vehicle which was in a skewed position. In these types of situations the emergency situation provides a defense. Defendant in this trial did not encounter such a situation. It was Plaintiff who encountered a vehicle crossing in front of him; Defendant merely encountered a vehicle which was slowing down or stopped due to a third vehicle having crossed in front of Plaintiff. In other words, Plaintiff — not Defendant — encountered the emergency situation.
Accordingly, in this liability phase of the trial, IT IS HEREBY ORDERED AS FOLLOS:
(a) Plaintiff's motion for a directed verdict on the issue of Defendant's negligence as well as to dismiss Defendant's affirmative defenses of comparative fault and emergency is GRANTED, and Defendant's motion to dismiss Plaintiff's complaint is DENIED.
(b) The Clerk shall enter a directed verdict finding that Defendant was negligent and liable in the occurrence of the October 21, 2019 accident between the parties and that said negligence was a substantial factor in causing the accident, that Plaintiff was not negligent in the accident's occurrence, and that Defendant did not establish his affirmative defense of an emergency situation.
The parties shall proceed to the damages phase of this trial on Monday, November 18, 2024.
Dated: October 29, 2024
AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:Defendant's testimony.

Footnote 2:Plaintiff's testimony.

Footnote 3:A plaintiff need no longer demonstrate freedom from comparative negligence (see Rodriguez v City of New York, 31 NY3d 312 [2018]).